Philadelphia Association of Linen Suppliers et al., Appellants, *v.* Philadelphia et al.

Argued October 12, 1939.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER and RHODES, JJ.

*William B. Rudenko,* with him *Harry Shapiro,* for appellant.

*Abraham Wernick,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellees.

OPINION BY RHODES, J., April 18, 1940:

The Council of the City of Philadelphia, on February 8, 1938, adopted an ordinance known as the "City Sales Tax Ordinance," and on February 24, 1938, certain amendments were made thereto. The ordinance, as amended (since repealed), bears a title in part as follows: "To provide revenue by imposing an emergency sales tax upon sales of certain tangible personal property, excepting certain foods, certain drugs and medicines, newspapers and periodicals, and rendering of certain services. ......"

Section 1 (d) of the ordinance contained the following definition: "The word 'sale' or 'selling' means any transfer of title or possession or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, and may include the rendering of any service specified in Section 2 of this ordinance, or for any purpose other than for exhibition purposes only."

Plaintiffs in this suit in equity are persons and corporations in the business of supplying freshly laundered flat linens and garments at regular intervals to business establishments or professional offices requiring a supply of such articles, and laundering the soiled articles pre-

viously supplied. The replacement cost of articles entirely worn out is included in the gross price charged plaintiffs' customers, but, depending on the article, may be as little as 12 per cent, not more than 30 per cent, and on the average approximates 20 per cent of the gross price paid by the customer. The ownership of the articles remains, in every case, with the supplier, who is under no obligation to any customer to return the identical linens previously used, the customers being served indiscriminately from a common stock of fresh linens. These terms are in some instances embodied in written agreements.

Pursuant to the authority conferred by the ordinance the Receiver of Taxes for the City of Philadelphia, on July 21, 1938, issued the following ruling: "Sales of tangible property to a linen‚ and laundry supply dealer to be used by such dealer to lease to hotels, restaurants, barbers, etc. are tax exempt. The leasing, renting or licensing the use of said supplies by such dealer to hotels, restaurants, barbers, etc. are taxable sales within the definition of the Ordinance. Such dealer is, therefore, required to collect the tax at the rate imposed on the gross amount of the transaction." [1]

---

[1] This ruling by the Receiver of Taxes for the City of Philadelphia does not follow the regulation issued pursuant to the New York City Sales Tax Local Law, which reads as follows: "Persons engaged in the business of furnishing coats, caps, aprons, dresses, towels, linens and articles of a similar nature, to barber shops, beauty shops and other establishments under an agreement which provides for a continuous service to be rendered in the periodic cleaning or laundering of said articles, are not deemed to be engaged in the sale of tangible personal property and receipts by such persons are not taxable. In these cases the value of the articles of personalty furnished bears no substantial relationship to the service which is to be supplied.

"Persons engaged, as described above, are required to pay the tax to their vendors on all purchases of tangible personal property used in connection with the service they render."

The ruling of the Receiver of Taxes is, however, in harmony

Thereupon, on behalf of plaintiffs, there was filed a bill in equity against the City of Philadelphia, its Mayor, Receiver of Taxes, City Treasurer, and City Controller seeking to restrain the assessment and collection of the 2 per cent tax provided by the ordinance upon plaintiffs' gross receipts for their services, on the grounds that the above regulation was discriminatory and arbitrary, and that plaintiffs were not engaged in the sale of tangible personal property. Defendants answered the bill, testimony was taken, and the court below made the following decree: "Plaintiffs' bill for preliminary injunction is dismissed." Plaintiffs appealed, and assign the entry of this decree as error.

It is agreed that this appeal be disposed of as if the lower court's decree were final.

Appellants rest this appeal upon three grounds: (1) That their business constitutes the furnishing of a service, and not the selling of tangible personal property; (2) that the taxing of their business is discriminatory and capricious, since admittedly the laundry business is not subjected to the tax; (3) that the ordinance is void as it violates section 6, art. 16, of the Charter Act

---

with interpretations of the Local Law of New York City expressed in *United Artists Corp. v. Taylor,* 273 N. Y. 334, 7 N. E. 2d 254; *Howitt v. Street & Smith Publications, Inc.,* 276 N. Y. 345, 12 N. E. 2d 435.

"The [Philadelphia] ordinance having been imported almost bodily from the Local Laws of New York City, where it was in comparatively successful operation for nearly four years at the time when it was enacted in Philadelphia, it is only reasonable that expressions and definitions unfamiliar to our laws and judicial decisions, which were copied exactly from the New York Local Laws, were used, and were intended to be used, in the same sense and with the same meaning as the same expressions had been employed in New York City, and to be subject to the same interpretations which had been placed by the courts of New York on those terms and expressions": *Young Men's Christian Ass'n of Philadelphia v. City of Philadelphia et al.,* 139 Pa. Superior Ct. 332, at page 339, 11 A. 2d 529, at page 532.

of June 25, 1919, P. L. 581, 53 PS §3256. These contentions will be considered in order.

The first is answered by the definition of the terms "sale" and "selling" as set forth in section 1(d) of the ordinance. In *Blauner's, Inc., et al. v. Philadelphia et al.*, 330 Pa. 342, 198 A. 889, this ordinance was before our Supreme Court. That was a suit to enjoin collection of this tax on the grounds that it amounted to a duplication of the capital stock tax, the corporate net income tax, the mercantile license tax, and that it could not be construed to include "club transactions" so-called. In disposing of the last of these objections, the Supreme Court, in an opinion by Mr. Justice DREW, said (p. 349) : "A club transaction is surely a 'transfer of ...... possession ...... for a consideration ......' The ordinance carries its own definition. We are, therefore, unconcerned with the technical requisites, urged by counsel, of a sale at common law, or with the meaning of the same term in the special context of other enactments, such as the Brooks High License Law and the Mercantile License Tax Act construed in the cases cited: *Klein v. Livingston Club*, 177 Pa. 224 [35 A. 606]; *Union League v. Ransley*, 39 Pa. Superior Ct. 514; *Com. v. Meyers*, 62 Pa. Superior Ct. 223. Our latest pronouncement, not restricted to the construction of any statute, is that 'the ordinary meaning of a "sale" is a transfer ...... of title to property for a consideration. These requisite elements are present when a member of a club orders a drink and pays for it. The club corporation purchases liquor and resells it just as any other vendor; the only difference is that its customers are limited to its membership': *Benner v. Tacony Athletic Association*, 328 Pa. 577, 580 [196 A. 390]. Far from indicating an intent to adopt a more restricted meaning, the definition of the present ordinance takes an even broader ground when it includes as a sale 'any transfer of ...... possession ...... for a consideration.' Moreover, fiscal measures, such as the

present, are to be strictly construed against exemptions: *Callery's Appeal*, 272 Pa. 255, 272 [116 A. 222]."

The description of appellants' business would seem, without any doubt, to bring it within the general language of the ordinance. The principle that fiscal measures, such as the ordinance with which we are here concerned, are to be strictly construed against exemptions requires a strict construction of the ordinance against appellants' attempt to escape taxation. Even without the aid of strict construction, appellants' business may fairly be described to consist of transfers of possession of their tangible (corporeal) personal property with license to use for a consideration, and such transactions may be fairly held to be within the language of the ordinance defining "sale" or "selling" to mean "any transfer of ...... possession ...... or license to use or consume ...... for a consideration." Such transactions constitute "sales" within the ordinance.

This view is supported by the construction placed by the courts of the state of New York upon the terms of a sales tax ordinance virtually identical with the one in the instant case. In *United Artists Corp. v. Taylor*, 273 N. Y. 334, 7 N. E. 2d 254, an appeal from a tax assessment was taken by a corporation engaged in the business of securing possession of photoplay films from their manufacturers, and licensing their use to exhibitors. The court held this transaction within the definition of the ordinance, and taxable. It said (p. 341): "The transaction which is the subject of the tax under review consists of the transfer by the distributor to the exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with the license to use or exhibit them for a specified time. The license to exhibit without the transfer of possession would be valueless. Together they are one transaction and constitute a sale within the definition of Local Law No. 24."

In *Mendoza Fur Dyeing Works, Inc., v Taylor*,

*Comptroller,* 272 N. Y. 275, 5 N. E. 2d 818, the Court of Appeals of New York also construed the same tax legislation with reference to respondent, which was engaged in the business of dyeing and processing fur skins owned by its customers. On the order of the comptroller of the city of New York, a sales tax was assessed upon respondent as vendee of the materials (chemicals and dyestuffs) used in its processes. The Appellate Division of the Supreme Court reversed this order on the ground that the chemicals adhered to the materials dyed and processed, and were resold to the owners, which resulted in double taxation. This decision was in turn reversed by the Court of Appeals on the ground that the use of the chemicals and dyestuffs in the dyeing and processing was incidental thereto, so that the dyer or processor (respondent) was the ultimate user, vendee, and taxpayer.

The distinction afforded by these authorities is the one upon which appellants' first contention would seem to turn. In *United Artists Corp. v. Taylor,* supra, it may be said that the parties would reasonably contemplate themselves as selling and buying the use of photoplay films, while in *Mendoza Fur Dyeing Works, Inc., v. Taylor, Comptroller,* supra, the fur dyer and the owners of the fur skins would consider themselves as selling and buying not materials nor the use of materials, but the result of a process in which certain materials were employed. In the present case, in our judgment, it is much more nearly in accord with the intention of the parties to say the subject of their sale and purchase was the use of the linen rather than the result of a process in which the linen was used; the service was subservient to the use, rather than the use subservient to the service. Possession was transferred, and the transferees asserted possessory interest in the linen for such length of time as was necessary to carry out the purpose intended. There was a resultant wearing out, a consumption, of the articles. For such transfers

of tangible pieces of property with license to use a consideration was paid as contemplated by the ordinance.

Appellants' second contention that application of the tax to their business while the laundry business remains untaxed amounts to discrimination forbidden by article 9, §1, of the Constitution, PS Const. art. 9, §1, is without merit. It suffices to say that the transactions of appellants' line of business lie within the definition set out in the ordinance, while the business of laundering lies outside that definition. The definition of "sales" and "selling" is stated in terms of well-established legal concepts, and it has frequently been said by our courts in the construction of tax legislation that the reasonableness of classification is for the legislature in the first instance; and that unless there is no rational basis for it, the courts will not interfere. *National Transit Co. et al. v. Boardman*, 328 Pa. 450, 197 A. 239. In the Boardman case our Supreme Court also said that classification is not necessarily invalid because borderline cases may present situations which, if they stood alone, might constitute argument against the adopted classification.

Finally, appellants contend that the title of the ordinance does not clearly express its subject in so far as that subject includes licenses to use personal property as distinguished from sales thereof.

For the first time appellants here assert that the title of the ordinance is defective and violates the Charter Act of June 25, 1919, P. L. 581. This point was not referred to in the bill of complaint, nor was it passed upon in any degree in the opinion of the court below. It does not appear that this objection was made in any exceptions filed in the court below. It could not therefore be presented here for the first time. *Commonwealth v. Budd Wheel Co.*, 290 Pa. 380, 387, 138 A. 915. "Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions [cases cited]": *Montgomery*

*County Bar Ass'n v. Rinalducci,* 329 Pa. 296, at page 298, 197 A. 924, at page 925.

However, we find no merit in appellants' position even if the question had been raised in due course.

"We need not refer to the numerous cases which hold that it is not necessary that all the distinct provisions of a statute be set forth in the title and that it is sufficient if that give notice of the subject of the act so as reasonably to lead to an inquiry as to what is contained in the body of the bill. Whatever the subject of a title reasonably suggests as appropriate to the accomplishment of the object declared is sufficiently indicated by such title. 'Every possible presumption is in favor of the validity of a statute and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger': *Sinking Fund Cases,* 99 U. S. 700; *Powell v. Penna.,* 127 U. S. 678; *Sugar Notch Borough,* 192 Pa. 349 [43 A. 985]": *Commonwealth v. Pflaum,* 50 Pa. Superior Ct. 55, at page 60; affirmed 236 Pa. 294.

In *Wilson et ux. v. Philadelphia et al.,* 330 Pa. 350, 198 A. 893, our Supreme Court again considered the ordinance now before us in a suit where the contention was made that the title was defective. In an opinion by Mr. Justice DREW, the Supreme Court said (p. 351): "The Charter Act of June 25, 1919, P. L. 581, states that the subject of a bill 'shall be clearly expressed in its title,' so that all will be put on notice of its contents. We think this sufficiently appears in the statement that the ordinance imposes a 'tax upon sales of certain tangible personal property,' which puts all on notice to inquire what sales and property are taxed."

The ordinance contained definitions of the terms used therein. The word "sale" was given a broader meaning than merely the transfer of title to property for a consideration. It cannot be said that the title of the ordinance failed to put the reader to further inquiry. *Turco*

*Paint & Varnish Co. v. Kalodner et al.*, 320 Pa. 421, 436, 184 A. 37. The purpose of the ordinance was to tax sales, and the purpose of the definition was to cover a situation where parties might attempt to call the sale by some other name. The ordinance was not intended to tax all transactions, but rather to cover only sales of certain tangible personal property and certain services. See *Howitt v. Street & Smith Publications, Inc.*, 276 N. Y. 345, 12 N. E. 2d 435. The title of the ordinance clearly put appellants and others interested on notice to inquire as to matters contained therein. "A title which leads to inquiry is sufficient in this respect": *Commonwealth v. Pflaum*, supra, 50 Pa. Superior Ct. 55, at page 60.

The decree of the court below is affirmed, at the cost of appellants.