## In re Merrill Theatre Corporation Sales and Use Tax

[415 A.2d 1327]

No. 74-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 3, 1980

*Paul P. Hanlon,* General Counsel, Department of Taxes, Montpelier, for Plaintiff.

*B. Michael Frye* of *Paul, Frank & Collins, Inc.,* Burlington, for Defendant.

*Gravel, Shea & Wright, Ltd.,* Burlington, for amici curiae Motion Picture Association of America, Inc. and Theatre Owners of New England, Inc.

**Larrow, J.** In 1976, the Vermont Department of Taxes assessed against Merrill Theatre Corporation a use tax in the amount of $24,044.73, plus interest at 1% per month and a 5% penalty, covering the rental from out-of-state suppliers of movie films for commercial exhibition in Vermont, and purchases of other personal property. The Commissioner subsequently abated the penalty and reduced the interest to ½% per month. Merrill appealed the assessment to the Chittenden Superior Court, which reversed the Commissioner as to the films and upheld only a small portion of the assessment relating to other personal property. The Department of Taxes has appealed that judgment, and the parties have here stipulated that only the taxation of the film rentals is before us, all other issues having been settled between them.

The amount of the tax in question is not in dispute, nor are the salient facts. Merrill is a Vermont corporation operating

several motion picture theatres. The transactions upon which the tax was levied are rentals of motion picture films, from out-of-state suppliers, for exhibition in one or more of those theatres, to which admission is charged.

Merrill urges three distinct grounds in support of the trial court's holding that the use tax does not apply to the rental transactions in question. Briefly put, they are: (1) that the result is an unintended form of double taxation; (2) that the film rentals are excluded from the tax because the films are purchased for resale; and (3) that the rentals are exempt from the tax because the films are used in the manufacture of a motion picture.

■ It is true that imposition of the tax results in two sources of revenue to the state; the first, unquestioned, being the amusement tax paid by theatre patrons for admission to the theatre. 32 V.S.A. § 9771(4). This charge is transmitted to the state by the theatre operator, here Merrill, but its burden falls upon the patron, 32 V.S.A. § 9778. The tax imposed upon the operator, however, involves a lease of tangible personal property by it. *Mt. Mansfield Television, Inc.* v. *Vermont Commissioner of Taxes*, 133 Vt. 284, 287, 336 A.2d 193, 195 (1975). It applies, not to the admission charged or its amount, but to the rental fee. While the fee here involved is calculated upon a percentage of admissions charged, it could very well have been set on a flat fee basis; the tax is imposed on the rental fee, not on the admissions. There are two completely different taxpayers in each instance; two separate and distinct privileges are being taxed. *Boise Bowling Center* v. *State*, 93 Idaho 367, 370, 461 P.2d 262, 265 (1969). Not raised as a constitutional question, but only as one of legislative intent, the taxpayer's argument on this point must be rejected.

Merrill's second argument is that the films in question are purchased for resale, and are therefore not subject to tax. This is the general scheme of the statute; the use tax is applicable to use within the state of tangible personal property purchased at retail, and not subject to the sales tax. 32 V.S.A. § 9773(1). "Use" is defined, in 32 V.S.A. § 9701(13), as the "exercise of any right or power over tangible personal property by the purchaser thereof . . . ." "Tangible personal property," under 32 V.S.A. § 9701(7), is "personal property which may be seen,

weighed, measured, felt, touched or in any other manner perceived by the senses . . . ." This definition, which adds but little to the ordinary concept of the term, carries stated exceptions for choses in action contained in documents, not here applicable. Sale or purchase includes any rental, lease, or license to use or consume for a consideration. 32 V.S.A. § 9701(6). And a retail sale is defined to mean the sale of *tangible personal property* to any person for any purpose, other than for resale, except casual sales. 32 V.S.A. § 9701(5).

■ In our view, the plain meaning of the statute dooms Merrill's contention that there is a resale of the films in question to the patrons of the theatre. We have already decided in *Mt. Mansfield Television, Inc., supra,* that the "tangible personal property" is the film itself, not the image which it produces, and that it is upon the film and its rental that the tax is imposed. That case is, in our view, controlling on Merrill's resale contention. It may well be that the theatre patron is "sold" or "leased" some right to view and enjoy the product of the film's projection, but he acquires no right whatever to the tangible property itself. He never comes into possession of it, and exerts no control over it. No transfer occurs to the patron in any reasonably acceptable sense. He takes nothing into the theatre, neither does he take anything out.

The only defined "use" of the film is by the theatre owner, who gets actual possession, uses the film for projection, and returns it at the end of the rental term to the supplier. Under the tortured logic which the taxpayer would have us apply here, the light bulbs, the seats, and the projectors would be "used" by the patrons, with the use constituting a "resale" and exempting their original purchase from tax. Recoupment of cost undoubtedly enters into the price paid by every consumer, including overhead expense. But recoupment is not equivalent to resale. The plain meaning rule, to which we adhere, *In re Middlebury College Sales & Use Tax,* 137 Vt. 28, 31, 400 A.2d 965, 967 (1979), precludes the conclusions reached by the trial court on this issue.

■ The taxpayer's final claim for exemption is under 32 V.S.A. § 9741(14). The material part of that subsection reads (defining a sale not covered):

> Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for sale . . . ; machinery and equipment for use or consumption directly and exclusively . . . in the manufacture of tangible personal property for sale.

The argument runs that the film itself is a part or ingredient of the image produced, which in turn is "sold" to the theatre patron. Under the plain meaning rule we have alluded to, the argument fails in all material aspects. As we have already ruled, the product of the projection, whatever it may be, is not "tangible personal property." The film itself does not become an ingredient or component part of the product; it remains unchanged and unaffected. It is not consumed or destroyed; it does not lose its identity. The photographic film, flash bulbs, and perforated tapes involved in *McClure Newspapers, Inc.* v. *Vermont Department of Taxes,* 132 Vt. 169, 315 A.2d 452 (1974), were destroyed in the process of producing a newspaper, a tangible product, and that case is not authority for the taxpayer's position here. Further, we cannot subscribe to the argument that the film in question is either "machinery" or "equipment" within the meaning of the exemption.

As a last argument, not pointed to as dispositive, Merrill brings to our attention an informal letter of the Commissioner of Taxes supporting its general contentions. We are urged to give the Commissioner's interpretation "great weight," as it was rendered nearly contemporaneously with enactment of the statute, and to avoid singling out one taxpayer for unique treatment. The letter in question expresses only a conclusion with no supporting reasons, and was not sent to Merrill. We feel that the weight we have accorded it is all it is entitled to, and note in this connection that the present Commissioner both abated the penalty on Merrill's assessment and cut in half the interest it was to bear. As to "unique treatment," nothing in the record supports that contention.

*The judgment appealed from is vacated, and the February 27, 1978, determination of the Commissioner of Taxes is reinstated. To be certified to the Chittenden Superior Court and the Department of Taxes.*